# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JILL PROVENZANO,        ) | |
|                      ) | |
|      Plaintiff,       ) | |
|                      ) | No. 16 C 1999 |
|      v.               ) | |
|                      ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting   ) | |
| Commissioner of Social Security,[1]  ) | |
|                      ) | |
|      Defendant.     ) | |

## MEMORANDUM OPINION AND ORDER[2]

Claimant Jill Provenzano ("Ms. Provenzano" or "Claimant") has filed this action seeking judicial review under 42 U.S.C. § 405(g) of a final decision of the Defendant, Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Income benefits ("DIB"). Ms. Provenzano filed for DIB on January 12, 2009, alleging a disability onset date of July 10, 2008 (R. 121, 145).[3] In her application for benefits, Ms. Provenzano stated that she was unable to work because of post-infectious functional bowel disease, nausea, fatigue, diarrhea, dizziness (R. 149). Ms. Provenzano's claim was initially denied in 2009 and after a hearing, an Administrative Law Judge found her not disabled on October 28, 2010 (R. 16). After an appeal and remand by the District Court (R. 573), the Appeals Council sent the case back to the ALJ and ordered her to consider specific issues related to Ms. Provenzano's mental health, the opinion of a non-examining doctor, and Ms. Provenzano's ability to perform certain jobs,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On October 12, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 23).

[3] Ms. Provenzano filed a second application for benefits on January 22, 2013 (R. 648). There is no explanation for the second application and it does not contain any new information.

given her assessed residual functional capacity ("RFC") (R. 574-578). After a second hearing, at which Ms. Provenzano, a medical expert, and a vocational expert ("VE") testified, the ALJ again denied Ms. Provenzano's claims on June 10, 2014 (R. 525-538). On December 8, 2015, the Appeals Council upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 509-512). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

We presently consider Ms. Provenzano's motion to reverse or remand the Commissioner's decision (doc. # 7), and the Commissioner's motion for summary judgment (doc. # 15). For the reasons that follow, Ms. Provenzano's motion for remand is granted, and the Commissioner's motion for summary judgment is denied.

I.

Ms. Provenzano was born on January 27, 1977 (R. 57). She has a college degree in environmental science and worked as a veterinary technician until July 10, 2008, when she stopped working because of her impairments (R. 37, 71). On March 5, 2009, Ms. Provevenzano was examined by rheumatologist, Bob Sun, M.D., after another of Ms. Provenzano's doctors requested a consultative examination because of her "constellation of symptoms" (R. 377). Dr. Sun noted at the end of the examination that Ms. Prvenzano's diffuse pain and fatigue, without apparent cause, could suggest fibromyalgia (R. 379). Dr. Sun examined Ms. Provenzano a second time on April 29, 2009, and then completed a fibromyalgia questionnaire, which formally diagnosed her with the disease (R. 393). In the questionnaire, Dr. Sun opined that Ms. Provenzano could work with frequent rest, but that she would be absent more than three times per month (R. 394). Ms. Provenzano saw Dr. Sun for follow-up appointments in June and September 2009; he continued to diagnose her with fibromyalgia and chronic fatigue, noting that

she had not been able to tolerate many of the pain or sleep medications she had been prescribed (R. 434, 466).

In January 2010, Ms. Provenzano switched her care to Kamdan Chaudhury, M.D., a rheumatologist who specialized in fibromyalgia (R. 472, 490). In June 2010, after his fifth appointment with Ms. Provenzano, Dr. Chaudhury completed a fibromyalgia RFC questionnaire which opined that Ms. Provenzano had a poor prognosis and was unable to work because of her pain and chronic fatigue (R. 473-489). Dr. Chaudhury also opined that Ms. Provenzano would need to lie down at unscheduled intervals during the day and would likely be absent for more than three days per month (*Id.*). Ms. Provenzano continued to see Dr. Chaudhury two to three times per year until at least June 2013 (R. 680-726). Progress notes from the appointments during that three year period consistently note that Ms. Provenzano complained of persistent body aches and pains, sleep disturbance, and fatigue, and that Dr. Chaudhury and continued to diagnose Ms. Provenzano with fibromyalgia, fatigue, poor sleep, and back pain (*Id.*).[4] During that time, Dr. Chaudhury did not prepare any other RFC opinions, however.

## II.

In her first opinion, the ALJ analyzed Ms. Provenzano's claims using the traditional five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a). The process requires the ALJ to consider: (1) whether the claimant has engaged in any "substantial gainful activity" since the alleged disability onset date; (2) if her impairment or combination of impairments is severe; (3) whether her impairments meet or medically equal any

---

[4] As part of her original claim for benefits, Ms. Provenzano also underwent a psychiatric examination by psychologist, William Higler, Ph.D., in August 2009 (R. 439-432). He diagnosed her with adjustment reaction of adulthood with depression due to loss of employment and health problems (R. 442). While this diagnosis and the opinion of a non-examining expert was the subject of additional directives by the first Appeals Council, we do not remand based on any of the allegations concerning Ms. Provenzano's mental health conditions, and thus will not discuss the issue in any detail.

impairment listed in Appendix 1 of the regulations; (4) whether her residual functional capacity ("RFC") prevents her from performing past relevant work; and (5) if her RFC prevents him from performing any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), (b)-(f); 416.920(a). The claimant bears the burden of proof at Steps 1 through 4; the burden then shifts to the Commissioner at Step 5. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

The ALJ found that Ms. Provenzano had the severe impairments of myofascial pain syndrome/fibromyalgia and adjustment reaction disorder (R. 21). The ALJ assessed Ms. Provenzano's RFC as allowing her to perform sedentary work, further limited to unskilled, four-step simple, routine and repetitive tasks (R. 23). Ms. Provenzano also needed to have a sit/stand option in which she could sit for one hour and then stand for one-two minutes, and could have only occasional contact with the public, co-workers, and supervisors (*Id.*). The ALJ gave some, but not significant, weight to the opinions of both Dr. Sun and Dr. Chaudhury, because neither doctor had examined Ms. Provenzano more than a few times prior to giving their RFC opinions (R. 26). Moreover, the ALJ noted that Ms. Provenzano had not fully complied with Dr. Chaudhury's treatment plan, such as by failing to undergo a recommended sleep study, and that she made her own decisions about when she would start or increase certain medications prescribed for pain (*Id.*).

In its order remanding the case back to the ALJ after her first opinion, the Appeals Council directed the ALJ to, *inter alia*:

- Give further consideration to Ms. Provenzano's RFC and provide appropriate rationale for the specific limitations the ALJ assessed (*Id.*).[5]

---

[5] The Appeals Council's other directives to the ALJ are not relevant to our decision, and so we do not discuss them.

At the second hearing, medical expert, Hugh Savage, M.D., testified that the degree of discomfort and pain from Ms. Provenzano's fibromyalgia was not well defined in terms of objective medical findings, which was typical for pain syndromes (R. 547). For that reason, the medical expert deferred his decision on the severity of Ms. Provenzano's fibromyalgia to the Commission (*Id.*). Dr. Savage opined that Ms. Provenzano would be able to perform light work, which included lifting 20 pounds occasionally, 10 pounds frequently, standing or walking six out of eight hours per day, and sitting six out of eight hours per day (R. 548-549).[6] Dr. Savage testified that he did not lower his RFC assessment because "the symptoms are not corelatable with laboratory values," but agreed on further questioning that such lack of laboratory correlation is typical for fibromyalgia and that it is "more of a Commissioner assessment in terms of assessing severity" (R. 551). Dr. Savage also acknowledged that Dr. Chaudhury opined that Ms. Provenzano would not be able to work consistently at a job because of the unpredictability of her chronic pain and fatigue, and explained that the treating doctor's opinion would have to be factored into the Commissioner's assessment of the severity of Claimant's impairment (*Id.*).

In her second opinion, the ALJ acknowledged the issues that the Appeals Council required she review; she then again found that Ms. Provenzano had the severe impairments of myofascial pain syndrome/fibromyalgia and adjustment reaction disorder (R. 21, 528). The ALJ assessed Ms. Provenzano's RFC after taking into account her complaints of fatigue, finding that she was able to perform sedentary work but never climb ladders, ropes, or scaffolds and only

---

[6] At the start of the second hearing, Claimant's attorney noted that he was waiting for additional medical records from Dr. Chaudhury that would need to be made part of the file (R. 542). The ALJ did eventually receive those materials, and they are part of the administrative record, but the medical expert who testified at the second hearing did not see them prior to testifying. The Commissioner incorrectly argues in her brief that Dr. Savage did have these records to review before the second hearing. The records Dr. Savage did not review prior to the hearing are marked as Exhibit 22F in the administrative record (R. 680-726). While several pages are bloodwork reports irrelevant to our decision here, the bulk of these records are treatment notes from Dr. Chaudhury dated between August 8, 2010 and June 5, 2013. The printed footer at the bottom of each page shows that these records were printed out on March 31, 2014, two weeks after the March 11, 2014 hearing (*Id.*).

occasionally climb ramps and stairs and balance (R. 532). She still needed to be able to stand for one-two minutes after every hour of sitting (*Id.*). Due to her anxiety and other mental health symptoms, she could have no more than occasional contact with the public, co-workers, or supervisors, and was limited to no more than four-step simple, routine, repetitive tasks (*Id.*).

The ALJ again gave some, but not controlling, weight to the opinions of Drs. Sun and Chaudhury – the same opinions she reviewed in her previous decision (R. 535). The ALJ's justification this time was that the doctors' opinions did not correlate with objective findings, as pointed out by Dr. Savage, nor were they done on a "function by function basis, with references to treatment notes or medical findings" (*Id.*). Finally, the ALJ noted that Dr. Savage testified that treatment for fibromyalgia includes exercise (*Id.*). The ALJ also gave some weight to Dr. Savage's opinion because his testimony was based on the medical record and Claimant's testimony at the hearing (R. 535). In her decision, the ALJ specifically noted that Dr. Savage testified that Ms. Provenzano's complaints did not correlate with any objective laboratory values or with her physical evaluations, and that Dr. Savage therefore surmised that Dr. Chaudhury relied on Claimant's own assertions about the severity of her pain (*Id.*).[7]

### III.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh

---

[7] In fact, Dr. Savage never testified that Dr. Chaudhury must have relied only on Claimant's own complaints of pain; he only stated that fibromyalgia pain and fatigue were subjective symptoms and there were no laboratory values that correlated with Ms. Provenzano's complaints, an issue that was common with fibromyalgia (R. 551).

evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Claimant alleges six errors by the ALJ in finding her not disabled (Pl. Mem. in Support of Summ. J at 5). We remand based on one of them: the ALJ's failure to support her decision to give Ms. Provenzano's treating doctors' opinions less than full weight.

## IV.

"A treating physician's opinion is entitled to controlling weight if it's supported by medical findings and consistent with substantial evidence in the record," *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013), and even if not controlling, that opinion cannot simply be discarded by an ALJ. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). If an ALJ decides not to give a treating physician's opinion controlling weight, she must provide a good explanation for rejecting or giving less weight to the treater. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Specifically, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)). Moreover, an ALJ has a duty to fill gaps in the record and seek additional information for an opinion for which the medical support is not readily discernible. See *Smith v. Apfel*, 231 F.3d 433, 437–38 (7th Cir. 2000) (the ALJ's duty to develop the record included soliciting updated medical records when the ALJ did not afford the treating doctor's opinion controlling weight on that basis).

Here, in deciding to give the opinions of Ms. Provenzano's treating doctors less than controlling weight, the ALJ wrongly credited an inaccurate interpretation of the opinion of the medical expert who testified at the hearing. In essence, the ALJ found Claimant's treating doctors' opinions unreliable because they did not include Dr. Savage's suggestion that a proper fibromyalgia assessment have objective findings that "correlate with laboratory values," and because they were not done on a "function by function basis, with reference to treatment notes or other findings" (R. 535). Although the ALJ relied heavily on this lack of laboratory values and her conclusion that Dr. Savage said they were necessary, in reality, even Dr. Savage agreed that such objective measures and standards are rarely available in cases of fibromyalgia (R. 547, 551). And nowhere did Dr. Savage suggest that a function by function assessment was required. Instead, Dr. Savage recognized that the severity of Ms. Provenzano's fibromyalgia was a decision reserved for the Commission, in this case, the ALJ. But, the ALJ bootstraps her severity determination by relying on her inaccurate interpretation of Dr. Savage's testimony in determining the Claimant retained the capacity to work.[8] Therefore, the ALJ's decision to give the opinions of Claimant's treaters less than full weight is not supportable, and her RFC assessment, which contradicts Dr. Chaudhury's opinion, is similarly unsupported.

Adding to the ALJ's error is the fact that she gave Dr. Savage's opinion weight because he was able to review the medical record and observe Ms. Provenzano's testimony at the hearing. In fact, Dr. Savage did not have access to many of Dr. Chaudhury's treatment notes, including those that covered the three year period after Dr. Chaudhury's June 2010 opinion, which consistently noted Ms. Provenzano's struggles with fibromyalgia. Moreover, the ALJ herself did not mention whether she reviewed Dr. Chaudhury's post June 2010 treatment notes

---

[8] Dr. Savage compounds the error by justifying his own light RFC assessment on the same ground, that Ms. Provenzano's symptoms are not correlatable with laboratory values (R. 551). And yet, on further questioning, he agreed that such an absence of objective measures is typical of pain sydromes (*Id.*).

and, if so, how that medical evidence figured into her decision. Importantly, all of the treatment notes in the record are consistent in diagnosing Ms. Provenzano with fibromyalgia. Given the ALJ's misplaced reliance of a lack of objective evidence, coupled with her apparent failure to address a large body of relevant medical records from Claimant's treater, the ALJ's justification for deciding that Ms. Provenzano was able to work despite her fibromyalgia was not supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, we grant Claimant's motion for summary judgment (doc. # 7) and deny the Commissioner's motion for summary judgment (doc. # 15). We remand the case for further proceedings consistent with this opinion.[9]

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:   January 29, 2018**

---

[9] We do not reach Claimant's other challenges to the ALJ's opinion.